## The People v. John W. Jones.

*Examination waived by plea.* After a prisoner has been arraigned and has pleaded not guilty to an information filed against him, it is too late for him to object that he has not been examined upon the charge contained in the information. Such plea is a waiver of examination.

*What distinct offenses.* The offense of setting fire with intent to burn a store (See *Comp. L.,* §§ 5749, 5750), is a distinct offense from, and not included in, that of attempting to set fire to and burn insured goods and chattels, contained in a store, with intent to defraud the insurance company. (See *Comp. L.,* §§ 5753, 5947.)

*Examination of persons charged with crime.* An examination under a complaint charging one of such offenses would not justify the filing of an information charging the other; and in such case, a motion to quash the information and proceedings, on the ground that no complaint has been made charging the defendant with the crime alleged in the information, and that he has never been examined upon it, if made before pleading, must prevail.

*Mis-recital, in order to summon jurors, of grounds for issuing the order.* An order directing the sheriff to summon jurors, contained the recital as the ground of the order, "that a sufficient number of petit jurors have not appeared at the present term of this court," and "that the appearance of such jurors is necessary," but the copy of the order upon which the sheriff made his return recited as the grounds of the order, "no petit jury having been drawn for the present term," etc:—

*Held,* That upon a motion for a new trial this misrecital of the ground of the order in such copy was of no consequence whatever, as it had no possible bearing upon the duty either of the sheriff or of the jurors summoned, and no influence upon the selection of the names.

*Power of court to summon jurors to appear at an adjourned day.* The circuit court, at a general term continued and held on the 11th day of April, had authority to make an order directing the sheriff forthwith to summon eighteen good and lawful men of the county to appear as jurors on the 4th day of May next thereafter, and then to adjourn to the day named for the trial of a cause. The statute (*Comp. L.,* § 4374), providing for summoning jurors, when from any

PEOPLE *v.* JONES.

cause they shall not have been drawn or a sufficient number shall have failed to appear, is a remedial one, and should be liberally construed. The power thereby given to summon a jury to appear forthwith includes the power, in case of an adjournment, to require the attendance on the adjourned day.

*Failure of sheriff to return manner of serving order summoning jurors, not ground of challenge to the jury.* The object of the provision of the statute (*Comp. L.,* § *4375*), requiring the sheriff to specify in his return the manner in which the jurors were served, is to enable the court to enforce their attendance, and to punish delinquents. When the jurors actually attended, the manner of service becomes quite immaterial; and no defect in the mode of notifying them could affect the defendant, nor can he object to the jury on that ground.

*Information: Insurance company: Incorporation: Evidence.* In an information under *Comp. L.,* §§ *5753, 5947,* an allegation that the insurance company, intended to be defrauded, is a corporation having a right to do business in this state, is unnecessary. Our statutes recognize the fact that insurance may be done by individuals and by associations unincorporated.

It being unnecessary to allege that the insurance company was a corporation, and the information containing no such averment, it was not necessary to prove its incorporation.

*Constitution construed: Documentary evidence in criminal cases.* The provision of our constitution (*Art. VI.,* § *23*) securing to the defendant in a criminal prosecution the right " to be confronted with the witnesses against him," does not apply to the proof of facts in their nature essentially documentary, and which can only be proved by the original or by a copy officially authenticated in some way; and especially not when the fact to be thus proved only comes up collaterally.

*Prisoner's statement: Charge to the jury.* An instruction to the jury that in estimating the weight to be given to the prisoner's statement, they " should consider whether it is consistent with the other facts proven to their satisfaction, and whether it is corroborated or not by the other proofs, facts or circumstances of the case," is not objectionable on the ground that it lays down an arbitrary or artificial rule on the subject. This charge was a substantial compliance with the views expressed in *Durant v. People, 13 Mich., 355.*

*Charge to the jury.* A request to charge based upon an hypothesis, which there is no evidence in the case to support, is properly refused.

It is no error to refuse to grant requests to charge, which relate to matters of fact exclusively within the province of the jury.

*Evidence: Application for insurance: Verbal statements of value.* Where, upon the trial of a prisoner for attempting to set fire to and burn insured goods, with intent to defraud the insurance company, it appears that the application for the insurance was in writing, if such application is offered in evidence or is present in court, and purports upon its face to state the value of the goods, or if it appears in any way that it contains a statement of their value, evidence of the verbal statements of the defendant to the insurance agent as to such value is incompetent, whether the rules of the insurance company required a written application containing such statement or not.

Where, however, it does not appear from the record that such written application was offered in evidence, or was present in court, or contained any statement of value, and the record contains nothing from which this can be inferred, the admission of evidence of such verbal statements of value is not such an error as will reverse a judgment.

*Practice in supreme court on criminal exceptions.* But where such a case comes to this court on exceptions before judgment, under the statute (*Comp. L., Ch. 197*), and it is possible, though it does not affirmatively appear, that such written application may have been brought to the attention of the court, and that it contained an estimate of the value of the goods materially below that verbally

PEOPLE v. JONES.

stated by the defendant, it will be certified back to the court below, with instructions that if such facts did appear a new trial should be granted, otherwise that judgment should be rendered upon the verdict.

*Heard October 20, 21.   Decided January 4.*

Exceptions certified from Lapeer Circuit.

The thirteenth, fourteenth and twentieth requests to charge, referred to in the opinion, were as follows, viz:

13.   That although the jury come to the conclusion that the two keys described by the witnesses were the keys belonging to said store, and by which the lock on the front door of said store was locked and unlocked, still the jury ought not to infer that there are no other keys that will lock or unlock said store, or work the lock on said front door.

14.   That although the jury come to the conclusion that the front and back doors of said store were fastened, and also the door leading up stairs, they ought not to infer that there are no other doors or places of ingress and egress to said store.

20.   That if the jury find that the respondent had taken a policy from said company, which policy was not to take effect until a subsequent day, and the time had not arrived when said policy was to take effect, the defendant should be acquitted.

*Dwight May, Attorney-General,* for the People.

*Gaskill & Geer,* and *Geo. V. N. Lothrop,* for the defendant.

CHRISTIANCY, CH. J.

The defendant was examined before the justice upon a complaint charging him with setting on fire, with the intent to burn, a store of one Robert King, in the city of Lapeer.   This was an offense defined, and its punishment provided for, by §§ *5749, 5750, Compiled Laws.*

PEOPLE *v.* JONES.

The information filed by the prosecuting attorney, charged the defendant with having unlawfully and willfully attempted to set fire to, and burn, a quantity of goods, wares and merchandise, clothing, hats and caps, and such other goods as are usually kept in a clothing store, of the value of two hundred dollars, of the goods and chattels of him, the said Jones, then and there being situate in a certain store occupied by him, which said store belonged to, and was the property of, one Robert King; and that, in said attempt, he, the defendant, did then and there set fire to certain combustible materials in said store; said goods, wares and merchandise, at the time of making the attempt aforesaid, being insured against loss or damage by fire, by the Putnam Fire Insurance Company of Hartford, Connecticut, with intent there and then and thereby, to injure the said Putnam Fire Insurance Company; that he failed in the perpetration of the offense, etc., contrary to the statute, etc.

This is a distinct offense from that charged in the complaint, and upon which defendant was examined, and not included in it. It is provided for by § *5753 Comp. Laws* (which provides for the actual burning), and § *5947* (which provides for the attempt).

The defendant having pleaded not guilty to the information, went to trial; and the people, having introduced their evidence in chief and rested, the defendant, by his counsel, moved that the information and the proceedings be quashed, and that defendant be discharged, for the reason that there has been no complaint against the defendant for the crime alleged in the information, and defendant has never been examined upon the charge contained in it.

Had this motion been made before pleading not guilty to the information, it must have prevailed. But, as the statute expressly authorizes a defendant to waive an examination,

we think it clear, as held by the majority of the court in *Washburn v. The People, 10 Mich., 383,* that he may waive it as well when called upon to plead to the information, as when brought before the magistrate for examination; and we think the plea of not guilty must be treated as such waiver.

An objection, in the nature of a challenge to the array, is taken to the mode in which the jury was obtained.

At a general term of the court on the 31st of March, 1871, a previous trial of the defendant seems to have been concluded by a disagreement of the jury; and at the same general term "continued and held on the 11th day of April," the following order was entered: "It satisfactorily appearing to this court that a sufficient number of petit jurors have not appeared at the present term of this court, and it appearing to the court that the appearance of such jurors is necessary, the sheriff of this county of Lapeer is therefore ordered and directed, forthwith to summon eighteen good and lawful men of this county, to be and appear in said court, at the court-house in the city of Lapeer, in said county, on the fourth day of May next, at 10 o'clock in the forenoon of said day."

The court seems then to have been adjourned, as is to be inferred from the record, to said fourth day of May. The sheriff on the fourth day of May, made a return that he had "summoned the following named persons" (naming eighteen). This return was made upon an order which seems to have been either drawn up by the sheriff, or by the clerk and given to him, and probably intended to be a copy of the order above recited, but reciting as the ground of the order: "no petit jury having been drawn for the present term," etc.; and the return purports that the jurors had been summoned "in obedience to the order," as given by the sheriff. Upon a motion being made for a new trial,

on the 23d of May, this return was amended by stating the mode of service, which was by giving verbal notice to each, and stating to them the substance of the order of the court.

We think the mis-recital of the ground of the order in the copy upon which the return was made, is of no consequence whatever; as it had no possible bearing upon the duty, either of the sheriff or the jurors summoned, and no influence upon the selection of the names. The case must stand, therefore, the same as if the return had been made upon a correct copy. It was the order actually made by the court which gave him all the authority he had to summon the jurors, and this only which imposed upon him the duty to summon them, and upon them the duty to attend. But defendant's counsel insists: *First*, that the court had no authority under the statute to make such an order for the appearance of the jurors upon a future day (the fourth of May), but only for their appearance forthwith; and *second*, that if the court had such authority, the sheriff did not return the manner in which any of the jurors were summoned or notified, and that it was too late to make the amendment after a motion for a new trial, based in part upon this defect.

The statute (*Comp. L.*, § 4374) provides that "Whenever, for any cause, grand or petit jurors shall not have been drawn and summoned to attend any circuit court, or a sufficient number of qualified jurors shall fail to appear, such court may, in its discretion, order a sufficient number of grand or petit jurors, or both, to be forthwith drawn and summoned to attend such court; or such court may, by an order to be entered in the minutes of such court, direct the sheriff of the county forthwith to summon so many good and lawful men of his county to serve as such jurors, as the case may require."

By *section 4375* the sheriff is required, as soon as practicable, to summon such jurors forthwith to attend such court; "and shall in like manner return the names of those summoned by him to the court, specifying in such return the manner in which each person was notified." *Section 4376* provides for talesmen. *Section 4377* provides that every person so served "shall attend forthwith, and serve as a juror, unless excused by the court;" and for any neglect or refusal so to attend, shall be subject to fine, in the same manner as jurors regularly drawn.

These provisions do not contemplate a jury merely for a particular *cause,* but for the *term,* or any remaining *portion* of a *term,* and, of course, for any number of causes for which a jury may be needed. And the order in the present case is, in this respect, in accordance with the statute, and not for this or any other particular case. The statute leaves it entirely optional with the court whether to order the names of the jurors to be drawn from the jury box, or whether the sheriff shall be ordered to select them; and the provisions in regard to summoning them, and their duty to attend, are the same in both cases; if in one case they are to be summoned forthwith and to appear forthwith, so they are equally in the other. The opportunities therefore, for tampering with the jurors, so strongly urged against this order, because the jurors might be selected and summoned before the day at which they were to appear under this order—are no greater than they would have been had their names been drawn from the box, and no greater in either case, than when a jury is regularly drawn prior to the term in the usual way, who are drawn and may be summoned fourteen days before the first day of the term, and *must* be summoned at least six days before.—(See *Comp. Laws,* §§ *4358 to 4365 inclusive*). Now, as to the power to make the order to summon the

jury for the fourth of May, to which the court seems to have adjourned, it is not denied that the court had a right to adjourn over to that day; and this power cannot be doubted. Had the court, before so adjourning, made the order for summoning the jury to appear forthwith, and they had so appeared, the court might still have adjourned over to the fourth of May, and required them to appear at that time, and still the order would have come literally within the statute, and would have been a full compliance with it. In what substantial respect is the case altered, when the court, having determined to adjourn over to the fourth of May, the order is made to summon them to appear on that day? The only difference is *purely* literal and technical, without substance or reason to make it good, in the one case, and not in the other. This is a remedial statute, and should be liberally construed to advance the general purpose of convenience intended; and we think the power given to the court, in its discretion, to issue an order for the summoning a jury to appear forthwith, ought, in the case of such adjournment, to be held to include the power to require the attendance on the adjourned day.

As to the objection that the sheriff's return did not specify the manner in which the jurors were notified, the object of this provision, as is evident from its nature and the context, was to enable the court to enforce the attendance and to punish the delinquent jurors for non-attendance. If the jurors actually attended as such, on the day named (and it does not appear that any of them failed to attend), the manner of service became quite immaterial; and no defect in the mode of notifying them could affect the defendant, and no objection on this ground can be made by him.

The cases which were cited on the argument, in reference to the award of a *venire* in a particular cause, and under

the old system of *nisi prius,* and the nature of the sheriff's return, throw very little light upon the mode of obtaining jurors under the system established by our statute. A return that the jurors (naming them) had been summoned was undoubtedly necessary to identify them as the persons selected, and that they were such men as the order required. But when they *actually appeared as ·jurors* (and are not claimed to have been incompetent) the manner of notifying them was of no consequence to the defendant or the people.

It is further objected that the information alleges no criminal offense, because it omits to aver that the "Putnam Fire Insurance Company of Hartford, Connecticut," was a, corporation, having a right to do business in this state; and that there was no proper evidence of its incorporation. But we think such an allegation unnecessary. It is not necessary that insurers, whether individuals, companies or associations, though located in other states, should be incorporated to authorize them to do business in this state. The business of insurance in England, was formerly transacted mainly, if not entirely, by individuals, partnerships or unincorporated associations, and the same business has been done to some extent in this country, in a similar way. We are aware of no law which prohibits it to be done in this state, by parties unincorporated. On the contrary, our statutes recognize the fact that it may be done by individuals and by associations unincorporated; but, if done here by parties out of the state, they are, like corporations, to comply with certain statute requirements. See act of February 13, 1859 (*Sess. L. 1859, p. 1049–1054,* §§ *1 and 6*), and act of April 3, 1869 (*Sess. L. 1869, p. 246,* § *24*).

Nor do we think it was necessary in an information of this kind, merely charging the defendant with attempting to burn property insured by the company named, with

intent to injure such company, to aver that the company had complied with our statutes in reference to foreign insurance companies, so as to give them a right to do business in this state. It is but matter of *evidence* under the charge of intent, if required to be shown at all affirmatively.

Not being alleged in the information that the company was an incorporation, nor necessary to be alleged, it was not necessary to prove its incorporation. It was only necessary to prove that there was such a company doing business as insurers, competent to issue the policy in question. But the prosecution did show that this company was engaged in doing insurance business in this state; and I am strongly inclined to believe that such business should have been presumed legal in this case, until the contrary was shown, and that it was unnecessary to show affirmatively a compliance with the statutes in reference to foreign insurance companies, until some evidence had been given to the contrary. Indeed, we are not prepared to say that if it expressly appeared the company had issued this policy without complying with such statutes, the policy would, on that account, be void in the hands of the assured, or that the company could set up their own violation of the statutes to shield themselves from liability in case of loss, especially if the assured was ignorant of such violation of the statutes. And if the policy would be valid under such circumstances, their non-compliance with the statutes would not avail the defendant in this case. But it is unnecessary to decide either of these points in the present case.

The prosecution, under objection from the defendant, did prove by certificate from the secretary of state: 1st. The articles of incorporation, a copy of which was filed in his office; 2d. A certified copy of the annual statement of said company, also filed in his office; and 3d. Certain

renewal certificates, showing that said company was authorized to do business in this state.

These were objected to on several grounds, but the only ground relied upon in the argument in this court, and which we think it necessary to notice, is that, by the constitution of the state, the defendant is entitled "*to be confronted with the witnesses,*" and that there is no law which authorizes documentary evidence between the people of the state and the defendant.

The statute (*Sess. L. 1859, p. 1053,* § *5*) expressly declares that such copies "certified under the hand of the secretary of state to be true and correct copies, shall be received as evidence in all courts and places, in the same manner, and have the same force and effect as the originals would have if produced."

We do not think the provision of the constitution securing to the defendant in a criminal prosecution the right "to be confronted with the witnesses against him," can apply to the proof of facts in their nature essentially and purely documentary, and which can only be proved by the original, or by a copy officially authenticated in some way, especially when the fact to be proved comes up collaterally, as in the present case. In such a case, it would, in fact, be impossible to apply it, except by requiring the attendance and testimony of the secretary of state, to the fact of the filing of the papers, etc., to which he has certified. We have been cited to no case, and are not aware of any, which would authorize us to reject the certificates on this ground.

The constitution of the United States (*Amendments Art. VI*) contains the same provision in the same words; yet, upon an indictment for arresting a person accredited as a foreign minister, contrary to an act of congress, it has been held that the certificate of the secretary of state (of the

United States) that the person had been so recognized by the department of state, was full evidence of the fact (*United States v. Benner, 1 Bald. 234*); and so upon an indictment for an assault and battery upon an *attache* and secretary to the legation of Spain, such certificate was held the highest and best evidence.— *United States v. Liddle, 2 Wash. C. C. R., 205.* Yet, the fact certified to was much more directly in issue, and more essential to the offense charged, than in the present case. See also *United States v. Ortega, 4 Wash. C. C. R., 531.*

We must therefore hold that the evidence was admissible, and as such, that it fully justified the ruling of the court, and his charge upon this point.

The next objection is that the judge, in his charge to the jury, laid down an artificial and arbitrary rule, by which the jury were to be guided in estimating the credit due to the statement made by the defendant in his own behalf on the trial, and did not leave it to the jury to estimate that credit according to their actual belief of its truth or falsehood.

The judge, after correctly charging as to the presumption of innocence, and that this presumption must be overcome by evidence which put the defendant's guilt beyond a reasonable doubt, proceeded to say: "And to determine the guilt or innocence of the accused, you may, and should, take into consideration all the facts and circumstances as they appear to you from the proofs in the case. And, in connection with all the other proofs in the case, you have a right to take into consideration the statement of the prisoner, and give it such weight and credit as you think it entitled to, under all the facts and circumstances of the case. And you may even give it more weight than the sworn testimony of unimpeached witnesses, if, under all the facts and circumstances of the case, you honestly believe it

entitled to such weight; but, in order to find what weight you ought to give to his statement, you should consider whether it is consistent with the other facts which may have been proven to your satisfaction, and whether his statement is corroborated or not, by other proofs, facts or circumstances of the case." Taken together, we think this charge is not open to the objection urged, and that it laid down no arbitrary or artificial rule by which to estimate the credit due to the prisoner's statement. It laid down the same rule for estimating the credit due to the prisoner's statement, as is always recognized as the correct one in reference to the testimony of witnesses. And it is undoubtedly the duty of jurors, in estimating the credit due to the testimony of any witness in the cause, or to the statement of the prisoner himself, "to consider whether it is consistent with the other facts which may have been proven to their satisfaction, and whether it is corroborated or not, by other proofs, facts or circumstances of the case."

This charge was apparently intended to comply, and does substantially comply, with the views expressed by this court, in *Durant v. The People, 13 Mich., 355 and 356*. It gives no absolute test by which alone the jury are to be guided, but only declares, in substance, that in weighing the credit due to the statement, they ought to consider it in connection with the facts proved to their satisfaction and with all the testimony and all the circumstances in the case. Such a statement, not being upon oath, and being made under very strong temptation to favor himself, should be subjected, at least, to all the scrutiny to which sworn testimony is subject.

The thirteenth and fourteenth requests to charge, relate to matters of fact so exclusively within the province of the jury, that we think there was no error in refusing to charge as requested.

The court also properly refused to charge the defend-
ant's twentieth request.  There was no evidence in the case
tending to support the hypothesis upon which the request
was based; for, though the defendant himself had paid
but a portion of the premium, Moore, the agent, had
advanced and paid the balance, and delivered to him the
policy.

A more serious question is sought to be raised upon
the ruling of the court admitting the oral testimony of
the insurance agent, to show what defendant, when he
applied for insurance, said his stock of goods was worth.
The agent had just stated that the application for insur-
ance was in writing; and the objection of the defendant to
the parol statement of the witness of what defendant said
they were worth, was, as stated in the record, " for the
reason that the application was made in writing, which,
upon its face, shows the estimate made by defendant, and
parol proof is incompetent to vary or contradict the writ-
ten application."

If it clearly appeared by this record that the applica-
tion in writing was offered in evidence, and purported
upon its face to show the value of the goods, and that
this had been brought to the attention of the court, or,
though not present, if the agent had stated that it con-
tained a statement of the value; then, whether the rules of
the company required a written application containing such
statement or not, I think the parol testimony of what
defendant verbally said the goods were worth, should have
been excluded; for the fair construction of the whole of the
agent's testimony upon the point is, that it was *this written
application upon which the policy was issued;* and he
alludes to no other, nor does he intimate that he was at
all influenced in deciding upon the insurance, or in issuing
the policy, by any other statement; nor does it appear

whether the value stated in the written application (if any was so stated) differed from the value, as so stated by him. It is only with reference to the effect upon the company or its agent in deciding upon the propriety of insuring the goods to some particular amount, and the question of intended fraud upon the company by means of the over-insurance procured, that the representation of value made by the defendant becomes material, whether made verbally or in the written application. And when the application is made in writing, containing the statement of the value of the property to be insured, the natural inference is, that the written statement is the basis upon which the company acted and decided, and upon which the insurance was made; and that, though the applicant may, in conversation, have stated the value at a higher sum, yet, that the sum he has stated in writing in the application itself, is the *only one* upon which he is *willing to rest as correct,* and upon which the company or its agent is expected to act; and all previous or cotemporary conversations upon the point, are as completely merged in the writing as they are in the case of other written contracts.

But does it appear by the record before us that the written application contained any statement of the value of the goods? There is certainly no statement of this kind in any of the evidence set forth in the bill of exceptions, which would seem to have been intended to set forth the whole evidence; there is no statement of the kind by the judge who tried the cause and signed the exceptions; nor is there any thing from which it can be inferred, unless it be from the objection made by defendant's counsel to the introduction of the parol evidence, giving it as the reason of his objection, that "the application was *made in writing,. which, upon its face,* shows the estimate made by the defendant." It does not appear what authority the counsel had for this

assertion; but, as it no where appears that the written appli-
cation was offered in evidence or even present in court, and
the question arose immediately upon the agent's statement
that the application was in writing, it seems probable that
this statement of the counsel was a mere inference from the
fact that the application was in writing, and that he sup-
posed it usual, if not necessary, to insert in such application
the applicant's estimate of the value.    The fact that the
judge appears to have over-ruled the objection, without
stating any reason, furnishes no inference; as he might
have over-ruled it for the very reason that the ground stated
had not been shown to be true in fact.    But it is neither
necessary nor usual for the bill of exceptions to state the
judge's reasons for his rulings, though they may have been
given at the time.    Had it appeared that the application
was in court, and had been brought to the attention of the
court, the statement of counsel that it did contain such
estimate, together with the silence of the judge upon the
fact, might, perhaps, have authorized a different inference.

Now, though it is usual in fire policies to require an
application in writing, and perhaps, to require the value of
the goods to be stated in it, it is not the law which requires
it, but the regulations of the insurance companies, or the
terms and conditions required by the insurer; and these
regulations, terms and conditions among companies which
require a written application, may, and often do, differ as
to what shall be set forth in it.    Whether there is a writ-
ten application, or if so, what it contains, must be matter
of evidence in each particular case.    In the present case
the record does not show what the application contained,
or the amount of insurance obtained.

Had there been a judgment in this case and it had been
brought before us upon a writ of error, we could not have
reversed it for any error appearing in the proceedings, as

no such error affirmatively appears. But this case comes up on exceptions, before judgment, under *Chapter 197, Comp. Laws, (Rev. Stat., 1846, Ch. 166)*, and under the 6th section, after determining the questions of law, we are to "give directions as to a new trial or such other proceedings as right and justice shall require." As it is possible, though it does not affirmatively appear, that the written application was offered in evidence and brought to the attention of the court, and that it contained an estimate by the defendant of the value of the goods, materially below that verbally stated by defendant, the case should be certified back to the circuit court, with instructions that, if the facts just stated as possible to have appeared or occurred on the trial, did so appear or occur, a new trial should be granted; otherwise that judgment should be rendered upon the verdict.

COOLEY, J., concurred.

GRAVES, J., did not sit in this case.

CAMPBELL, J.

I concur in the result arrived at by the chief justice. I concur also in all his reasonings and rulings, except as to the regularity of summoning the jury. Had the objection been seasonably taken that the sheriff did not act upon the order actually entered by the court (which I think was regular), I am not prepared to say the objection would have been groundless. I prefer to reserve my opinion upon that point. But the objection was one which appeared of record and which should have been made the ground of a challenge to the array. This was not done, and by going to trial without such a preliminary objection, it was waived.