# HUGH PATTERSON V. THE STATE OF TEXAS.

## IN COURT OF APPEALS, TYLER TERM, 1884.

*Evidence.—Certified Copies of State Laws.*—The act of Congress (Pasch. Dig. art. 3709--10) provides for the exemplication and authentication of state laws. The statute of this state (Revised Statutes, art. 2250) provides that the printed statute books of this state, of the United States, of the District of Columbia, or of any state or territory of the United States, or of any foreign government, purporting to have been published under authority thereof, shall be received as evidence of the acts and resolutions therein contained. It is further provided (Rev. St., art 2251) that "a certified copy under the hand and seal of the secretary of state of any act or resolution contained in any of such printed statute books deposited in his office, or of any law or bill, public or private, deposited in his office, in accordance with law, shall be received as evidence thereof."

*Same—Bigamy—Proof of Foreign Laws.*—A general rule upon proving foreign laws is, in the opinion, quoted from 1 Greenl. Ev., sects 488-9. The written law of another state cannot be proved by parol in Texas. Under these rules certain written instruments certified by the secretary of state to be copies of certain statutes of the state of Michigan deposited in his office, were properly admitted in evidence.

*Same.*—The fact that the certified copy of a statute omits certain sections of the same will not invalidate the certificate as to the sections copied, and in the absence of contrary proof this court will hold that the sections copied into the certificate are all the sections relating to the rite of matrimony and its solemnization in Michigan.

*Statutes Construed.*—Sections 7 and 18 of chapter CLXIX, title XXVIII, of the laws of the state of Michigan carry their own intelligible interpretation. The former section qualifies justices of the peace to solemnize marriage and make certificate of the fact, and the latter section defines the status of such certificate as evidence. See the opinion for objections to the certificate of the justice who solemnized the marriage in another state as evidence in a trial for bigamy in this state, and for the reason they are *held*, severally, to be untenable.

Appeal from Jefferson county.

The opinion discloses the case.

### OPINION.

This is ac appeal from a conviction for bigamy. On the trial the state was permitted, over objections of the defendant, to read a certified copy of sections 1, 7, 8, 9, 16 and 18 of title XXVIII, chapter CLXIX, of the laws of the state of Michigan, relating to marriage and

the solemnization thereof. Attached to the copy was the following certificate, viz :

THE STATE OF TEXAS, }
DEPARTMENT OF STATE. }

I, J. W. Baines, Secretary of State of the State of Texas, do certify that the foregoing are true copies of sections 1, 7, 8, 9, 16 and 18 of chapter CLXIX, title XXVIII, concerning marriage and the solemnization thereof, as contained in the compiled laws of the state of Michigan, purporting to have been compiled by state authority in the year A. D. 1872, said volume being now on deposit in this department. and received by due course of exchange.

Witness my official signature, seal, etc.

Signed,                                    J. W. BAINES,
(Seal attached.)                           Secretary of State.

Two objections were urged to the introduction of this certificate as evidence :

1. Because under the constitution of the United States and of this state providing that an accused must be confronted with the witnesses against him, such evidence was inadmissible against him.

2. Because said certificate only purported to contain a portion of the statutes of Michigan, regulating marriage in that state, and that purported copy shows on its face that sections 2, 3, 4, 5, 6, 10, 11, 12, 13, 14, 15, 16 and 17 of said law are omitted.

As to the first objection, the act of congress provides for the exemplification and authentication of state laws. (1 U. S. statutes at large, page 122 ; Brightley's Digest of Laws of U. S., p. 625; Pasc. Dig., art. 3709, 3710.)

Our statutes provide that "that the printed statute of this state, of the United States, of the District of Columbia, or of any State or Territory of the United States, or of any foreign government, purporting to have been printed under the authority thereof, shall be received as evidence of the acts and resolutions therein contained." (Rev. Stats. art. 2250.)

A certified copy under the hand and seal of the secretary of state of any act or resolution contained in any of such printed statute books deposited in his office, or of any law or bill, public or private, deposited in his office in accordance with law, shall be received as evidence thereof. (Rev. Stats., art. 2251.)

Laws of a state under these provisions when offered as evidence,

are not subservient to, or within the purview of the rules which apply to proofs of private documents. They are exceptional and if parol evidence with regard to them is admissible at all, it must be on some grounds peculiar to the subject of foreign cases. (1 Greenl. Ev. §§ 488, 489.) The written law of another state cannot be proved by parol in Texas. (Martin v. Hayne, 11 Texas, 294.)

The identical question before us was made in the People v. Jones, and the supreme court of Michigan said : "We do not think the provision of the constitution, securing to the defendant in a criminal prosecution the right to be confronted with the witnesses against him," can apply to the proof of facts in their nature essentially and purely documentary, and which can only be proved by the original, or by a copy officially authenticated in some way, especially when the fact to be proved comes up collaterally' as in the present case· In such a case it would in fact be impossible to apply it, except by requiring the attendance and testimony of the secretary of state to the fact of the filing of the papers, etc., (statute laws) to which he has testified. We have been cited to no case, and are not aware of any which would authorize us to reject the certificates on this ground." (24 Mich., 215.) This court has enunciated the same doctrine with regard to documentary proof in Rogers v. State, 11 Texas Ct. App., 608, and May v. State, 15 Ct. App., 430.

As to the omission of certain sections of the Michigan law in the certificate of the secretary of state, such omission will not invalidate the certificate as to the' sections given therein, and in the absence of proof to the contrary, we are warrented in holding that the sections copied into the certificate are all the sections relating to the rite of matrimony and its solemnization in Michigan. Those copied into and embraced within the certificate appear to us amply sufficient for an understanding of the Michigan law, so far as necessary to be understood and applied to the questions raised by the facts in the case.

From the sections of that law as copied we find that section 7 authorizes justices of the peace to solemnize marriages in their respective counties, and to make certificates of the fact. By section 18 it is provided that "the original certificates and records of marriage made by the minister or justice as prescribed in this chapter, and the record thereof made by the county clerk, or a copy of such record duly certified by such clerk, shall be received in all courts

and places as presumptive evidence of the fact of such marriage."
Having proved the law the prosecution then offered in evidence a
copy of the certificate of Thomas A. Paine, justice of the peace, to
the effect that he had on the 27th day of October, 1866, in the town-
ship of Manistee, State of Michigan, united in marriage Hugh Pat-
terson and Mrs. Ann Maria Cowen. To this copy of the marriage
certificate was attached the official certificate of Baxter, the county
clerk of Manistee county, certifying that the copy of the marriage
certificate had been compared by him with the original record in his
office, and that the same was a correct transcript therefrom. and the
whole of such original two other attached certificates were those of
the secretary of state of Michigan, one certifying to the official char-
acter of Paine as justice at the date of said marriage, the other be-
ing a similar certificate as to the election and qualification of Bax-
ter as county clerk of Manistee county.

Defendant's objections to the justice's certificate were: 1. Be-
cause said certificate is not competent evidence of the marriage of
defendant and Ann Maria Cowen in a foreign state.

2. Because said certificate, with its accompanying certificate of
Baxter, county clerk, shows on its face, that it is a copy and not the
original certificate of the justice.

3. Because no loss or absence of the original had been shown or
accounted for.

4. Because the said certificate was not filed in the case until after
commencement of the trial ; nor had any previous notice of filing
the same been given defendant or his counsel.

5. Because said justice's certificate, though it had been the ori-
ginal certificate of marriage in another state, could not be used in
evidence in a criminal trial in this state until the laws of such other
state are proven, and shown to confer such authority upon a justice
of the peace."

As to the last two objections, which will first be noticed, we
have already seen that the laws of Michigan were proven up by the
certificate of the secretary of state of Texas, and that those laws
expressly conferred upon a justice of the peace authority to solem-
nize the rites of matrimony in that state.

Should the certificate have been ;filed three days before trial, and
notice of such filing given in order to make it admissible as evidence
in the case ?

Such is unquestionably the rule with regard to deeds and instruments of like nature, both in civil and criminal cases ; the filing and previous notice being designed to obviate the necessity for proof of the execution of the instrument, and the statute further contemplates that such instruments filed with notice, when offered in evidence, shall be free from the taint of forgery. (Johnson v. State, 9 Ct. App., 249.) But this rule of practice does not apply to official certificates of records of another state. These, when they have b een properly authenticated under the acts of Congress, are, by the terms of the law, declared entitled to such faith and credit through out the United States, as they have by law or usage in the courts of the state from whence the said records have been taken. (Pasch. Dig., art. 3709, 3710.) Such certificates import verity and are not required to be proven up. (1 Greenl. Ev., §§ 488, 489.) We have already seen by the 18th section of the Michigan law as quoted above, that a copy of a marriage certificate " or the record of the s me duly certified by the county clerk " it is declared " shall be received in all courts and places as presumptive evidence of the fact of such marriage."

The second and third objections are that the justice's certificate as offered was a copy of an original, which original not having been shown to be lost, a copy could not be used. Mr. Greenleaf says : "The weight of authority seems to have established the rule, that a copy given by a public officer whose duty it is to keep the original, ought to be received in evidence." (1 Greenl. Ev., § 485.) Under the Michigan law the county clerk was the proper custodian of the original marriage certificate.

We have reserved for the last to be considered the defendant's first ground of objection to the certificate, because the most serious and important. The question it presents is whether or not such a certificate of a marriage, solemnized in another state, is admissible as evidence and competent to prove the fact of such marriage on a trial for bigamy in this state !

First : Was is admissible in evidence ? This precise point came up in The People v. Lambert, 5 Mich., 349, which was a trial on a charge of bigamy. The lower court having admitted as evidence a certificate from New Jersey of the first marriage. The court say : "The certificate of marriage, even if the law of New Jersey had been proved, was improperly admitted in evidence. Without deciding

whether the act of congress can be made to apply to such documents at all, we can discover no ground upon which this certificate cannot be received in a criminal case. By the English law, a register of marriage is not a clergyman's certificate, but is signed by the parties in the presence of witnesses. (1 Russ on Crimes, 216.) Proof of the register then is proof of the act of the party as much as proof of his signature to a deed would be. But a certificate merely signed by the minister (which was the case with the certificate they were considering) while it may, perhaps, avail in civil proceedings, if properly supported, cannot avail in criminal trials, when the defendant is entitled to confront the witnesses." No authority is cited by the court in support of this doctrine, nor have we found the doctrine approved by any subsequent decision.

In Smith v. Smith, which was an action for divorce, an attempt was made to establish the former marriage by proof of the cohabitation of the parties, and also by evidence of its solemnization by a justice of the peace, an officer duly authorized, as it was contended, by the laws of the state of Missouri, to celebrate the rites of matrimony. Our supreme court say: "Nor are we of opinion that the foreign marriage was sufficiently established by the evidence adduced of its actual solemnization. This consisted in a certified copy from the office of the recorder of Ralls county, state of Missouri, of a certificate under the sign manual of a justice of the peace, that he had on a certain day, in 1880, solemnized according to law, the marriage between the deceased and one Harriet Stone. Admitting that this record is authenticated according to the act of congress of 1834, and that it should therefore have such faith and credit awarded to it in our courts, as by the laws and usages of the state of Missouri it has in the courts of that state, yet having no knowledge of the laws and usages of that state, relative to the subject matter, we cannot determine the faith and credit to which this office copy of the record may be entitled. The form, validity, and effect of the record, and of the probate if any be required, must depend on the provisions of some local statute, and this should have been proved before the competency or force of the evidence could be determined. We cannot know without proof of the law whether such an instrument is authorized to be recorded, nor the legal effects of the production of a copy of such a record in a court of justice." (1 Texas, 621.)

In the case we are considering the law of Michigan was proven. By that law it was required that marriage certificates should be recorded by the county clerk, and that his certified copy of such record "shall be received in all courts and places as presumptive evidence of the fact of such marriage."

Was this record such an one as could be exemplified and authenticated under the act of congress to another state? If a record, we see no reason why. The statute of the United States reads : " That from and after the passage of this act all records and exemplifications of office books which are or may be kept in any public office of any state not appertaining to a court shall be proved or admitted into any other court or office in any other state by the attestation of the keeper of the said record or book, and the seal of his office thereto annexed, if there be a seal, together with a certificate of the presiding justice of the court of the county or district as the case may be in which said office is or may be kept, or of the governor, the secretary of state, etc., * * * that said attestation is in due form, and by the proper officer * * * and if said certificate be given by the governor, the secretary of state, etc., it shall be under the great seal of the state in which the said certificate is made. And the said records and exemplifications, authenticated as aforesaid, shall have such faith and credit given to them in every court and office in the United States, as they have in the court or office of the state from whence the same are or shall be taken." (2 U. S. St. at Large, 298 ; Brightly's Digest Laws of U. S., 266 ; Pasch. Dig., art. 3710; Wharton Cr. Ev., §§ 179, 180.)

"Exemplications of registries of other states must be authenticated (unless there be local legislation or adjudications prescribing less stringent tests) according to the act of congress. When the act of congress is substantially complied with, they may be received." (Whart. Cr. Ev. [8 ed.] sect. 194.) "An official registry * * * is admissible when kept in conformity with law, and when only authenticated to prove such facts as the law requires to be registered. It follows that whenever a baptismal, marriage or burial registry is kept in accordance with statute, such registry being duly authenticated, is admissible to prove the facts which are within the statutory authority." (Whart. Cr. Ev. sec. 530 ; Whart. Ev. [2 ed.] section 653.)

When a statute, as is the case in several states, requires the return

of a certificate of marriage, to be made by the officiating minister to the county clerk for record, the proper mode of proving such fact is by an exemplification of the certificate. But an exemplification of a foreign certificate of marriage, will not be received unless it be proved that the record was kept in conformity with law, and that the person officiating was authorized to officiate." (Whart. Cr. Ex. (2 ed.) 535 ; 1 Whart. Ev., 653.)

From these authorities we conclude when a certificate of marriage is required to be registered, and is properly registered in the county under the state law, it can be authenticated as an exemplification of a record to another state, under the act of congress; and that being a record which can be so exemplified, when thus authenticated, it is admissible as other documentary evidence would be. "Documents of a public nature and of public authority are generally admissible in evidence, although their authenticity be not confirmed by the usual and ordinary tests of truth, the obligation of an oath and the power of cross examining the parties on whose authority the truth of the document depends." (1 Whart. Ev., sec. 614 and note.)

Mr. Bishop says : "Documentary evidence is receivable, and is proper, if required, in criminal cases as in civil. It is governed by the same rules. For example : A record may be proved by a certified copy. And the constitutional provision securing to indicted persons the right to be " confronted with the witnesses" against them, does not abrogate this method of proving facts in their nature documentary." (1 Bish. Cr. Proc. [3 ed.] sec. 1132—3—4.)

A certificate of marriage in another state being admissible evidence, the next question is, how far is it competent to prove a marriage in fact ? Mr. Wharton says : "The marriage registry proves not only the fact of marriage, but the time of celebration." (Whart. Cr. Ev. [8 ed.] sec. 502.) Mr. Greenleaf says : "A certificate of marriage also by the officiating clergyman or magistrate, though ordinarily not in itself evidence of the fact it recites, yet if proved to have been carefully kept in the custody of the party it affects, and produced from the proper custody, may be read as collateral proof in the nature of a declaration and assertion by the party of the facts stated in the paper. Such certificate also, or a copy of the parish register, or other document of like character may be read as evidence confirmatory of the proof by reputation and cohabitation."

(1 Greenl. Ev., sec. 463.) We can see no good reason why, if admissible, and there is no doubt but that it is, it should not, as stated by Mr. Wharton, prove not only the marriage, but the time of celebration, if the parties be identified as the parties named in the certificate.

But let us take Mr. Greenleaf's rule and apply it to the facts of the case. Under his rule it is confirmatory of reputation and cohabitation. In this case a witness testified on the stand that she had lived in Manistee, Michigan ; that she knew the defendant and his first wife, *nee* Ann Maria Cowen ; that she was not present at their marriage, but after the marriage was introduced by Ann Maria Cowen that was to the defendant as her husband ; that according to general reputation in Manistee, Michigan, defendant and Ann Maria Cowen were man and wife, lawfully married ; that when she first saw the defendant at Beaumont, she asked about his wife, Ann Maria, and he said she was still in Michigan and he intended returning to her. If these facts needed confirmation of the fact of the Michigan marriage, then Mr. Greenleaf says a certificate of that marriage was admissible as confirmatory evidence. But it is said that reputation of the fact of the first marriage was inadmissible under our statute which says that "proof of marriage by mere reputation shall not be sufficient." (P. C., art. 328.) The statute does not say that reputation is not admissible as evidence to be taken in connection with other proofs to establish the fact, but that in and of itself alone, and without other evidence, it is insufficient to establish the fact. "Reputation is proof in connection with other facts." (Dumas v. State, 14 Ct. App., 464.)

Other errors are assigned and ably discussed in the brief of counsel for appellant. All those of a material character have been necessarily, though incidentally passed upon in the discussion of the questions we have decided in the foregoing pages of this opinion. We believe appellant has been convicted upon competent and legal evidence, and that the evidence is sufficient. We have found no error in the record for which the judgment should be reversed, and it is therefore in all things affirmed.

White, P. J.

Affirmed.