816 July 25, 2013 No. 32

IN THE SUPREME COURT OF
THE STATE OF OREGON

STATE OF OREGON,
*Respondent on Review*,

*v.*

EDWARD ROGER COPELAND,
*Petitioner on Review.*

(CC 090647486; CA A143210; SC S060370)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 8, 2013.

Kali Montague, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for petitioner on review. With her on the brief was Peter Gartlan, Public Defender.

Doug M. Petrina, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

BREWER, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____
    * Appeal from Multnomah County Circuit Court, Merri Souther Wyatt, Judge. 247 Or App 362, 270 P3d 313 (2011).

**BREWER, J.**

In this punitive contempt proceeding for violation of a Family Abuse Prevention Act (FAPA) restraining order, defendant challenges the admission in evidence of a deputy sheriff's certificate of service of the restraining order. Defendant asserts that admission of the certificate of service violated his confrontation right under Article I, section 11, of the Oregon Constitution, because the state did not establish that the declarant was unavailable to testify. Defendant also asserts that the document was "testimonial" evidence that was inadmissible under the confrontation clause of the Sixth Amendment to the United States Constitution. The trial court concluded that the certificate was admissible despite defendant's constitutional objections, and, after defendant appealed from his ensuing conviction, the Court of Appeals affirmed. *State v. Copeland*, 247 Or App 362, 270 P3d 313 (2011).

As explained below, we conclude that the out-of-court declaration made by the deputy sheriff who issued the certificate of service in the underlying FAPA proceeding here was not "witness" evidence that triggered defendant's confrontation right under Article I, section 11, because the certificate was an official record whose content was confined to a matter that the deputy sheriff was bound by an administrative duty to report, and it did not include investigative or gratuitous facts or opinions. In addition, we conclude that the certificate was not testimonial evidence under the Sixth Amendment. Therefore, we affirm the decision of the Court of Appeals and the judgment of the circuit court.

## I.   BACKGROUND

The pertinent facts, summarized from the Court of Appeals opinion, are few and undisputed. Defendant's then-wife, S, obtained a restraining order that prohibited defendant from coming within 150 feet of her home and other locations that she frequented, including the Savoy Tavern, where she worked. *Id.* at 364. The next day, Deputy Sheriff Schweitzer certified by written proof of service that he had personally served defendant with the restraining order that day. Several weeks later, S was working at the Savoy

Tavern and noticed that defendant was seated at the bar of a restaurant across the street. She called the police. The responding officers determined that defendant was within 150 feet of the tavern and arrested him for violating the restraining order. *Id.* at 365.

The state charged defendant with punitive contempt under ORS chapter 33 for violating the restraining order.[1] The charging instrument alleged, in part, that defendant, "having received notice of [the restraining order] did * * * willfully enter * * * [and] remain at the area 150 feet from the Savoy Tavern" in violation of the restraining order. *Id.* (brackets and omissions in the original; emphasis omitted). At trial, the state offered the certificate of service as evidence that defendant had notice of the restraining order. Defendant objected, arguing that admission of the certificate of service without allowing him to confront Schweitzer violated his state and federal constitutional confrontation rights. The state responded that the document was admissible under the official records hearsay exception, OEC 803(8), and therefore was not subject to the confrontation protections of Article I, section 11. As to the federal constitution, the state asserted that the certificate of service was not "testimonial" and thus defendant's Sixth Amendment confrontation right was not triggered. The trial court agreed with the state and admitted the evidence. Ultimately, the trial court found defendant in contempt of court and imposed punitive sanctions.

Defendant appealed, renewing his constitutional objections to the admission of the certificate of service. In a written opinion, the Court of Appeals affirmed. First, the court rejected defendant's federal constitutional argument, citing its prior decision in *State v. Tryon*, 242 Or App 51, 59, 255 P3d 498 (2011), where it had held that the admission of a return of service of a restraining order did not violate the defendant's right to confrontation under the Sixth Amendment because the evidence was not testimonial. *Copeland*, 247 Or App at 364 n 1. Turning to the Oregon Constitution, the court concluded that, even though the confrontation

---

[1] Defendants in punitive contempt proceedings are generally entitled to the same constitutional protections afforded defendants in criminal proceedings, except for the right to a jury trial. ORS 33.065(6).

guarantee in Article I, section 11, generally precludes the admission of hearsay evidence "unless the state establishes that (a) the declarant is unavailable to testify and (b) the statements bear 'adequate indicia of reliability,'" *id.* at 366 (quoting *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985)), that guarantee does not apply to "certain 'historical exceptions' corresponding to types of hearsay that 'the framers of the Oregon Constitution would have understood \*\*\* to have constituted an exception to the confrontation rights guarantee.'" *Id.* at 367 (quoting *State v. William*, 199 Or App 191, 197, 110 P3d 1114, *rev den*, 339 Or 406 (2005)).

The court then noted that, in this case, defendant had acknowledged that some official records fall under an "historical exception" to the confrontation right, and that defendant had argued only that, in the context of official records, the historical exception pertained solely to proof of "collateral" matters. *Id.* at 366. Thus, the court concluded that "[t]he inquiry in this case reduces to whether the submission of a public record to establish an essential—as opposed to 'collateral'—fact in a criminal proceeding falls within such an 'historical exception' to confrontation." *Id.* at 367. Relying on its own prior case law, the court concluded that the official records exception to the state confrontation right applied equally to the proof of "essential" facts as it did to "collateral" facts. *Id.* at 369. In a concurring opinion, Judge Sercombe stated that he was "not sure that the analysis in *William* continues to be correct" in light of *State v. Birchfield*, 342 Or 624, 157 P3d 216 (2007), where this court held that the admission of a criminalist's laboratory report without either requiring the state to produce the criminalist at trial to testify or demonstrating that the criminalist was "unavailable" violated Article I, section 11. *Copeland*, 247 Or App at 370-71 (Sercombe, J., concurring).

On review, defendant does not dispute that the certificate of service was a qualifying official record under OEC 803(8). That rule provides, in part, that the following are excepted from the rule against hearsay, even though the declarant is available as a witness:

> "Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth:

"(a)   The activities of the office or agency;

"(b)   Matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, in criminal cases matters observed by police officers and other law enforcement personnel * * *."[2]

However, defendant asserts that the Court of Appeals erred in concluding that its admission did not violate his state and federal constitutional confrontation rights. As part of the "first things first" methodology, we consider state constitutional issues before we consider federal claims. *Campbell*, 299 Or at 647.

With respect to Article I, section 11, defendant argues that the Court of Appeals incorrectly concluded that the confrontation requirement does not apply when hearsay evidence, although otherwise admissible as an official record, is offered to prove an "essential"—as opposed to collateral—fact in a criminal case. In this case, defendant contends, the certificate of service was essential to establish a *prima facie* case for contempt and, therefore, its admission was subject to the confrontation protections of Article I, section 11. In particular, defendant urges that the trial court erred in admitting the certificate of service in the absence of a showing that Officer Schweitzer was unavailable to testify.

In concluding that the evidence was admissible, defendant argues, the Court of Appeals made two mistakes. First, defendant argues that the court misapplied this court's decisions discussing the existence of historical exceptions to the confrontation right under Article I, section 11. Defendant asserts that those decisions stand for the proposition that certain hearsay evidence may fall outside the protections of the confrontation right only if the evidence is "collateral" and no other means of obtaining the evidence exists. Those decisions do not, defendant urges, support the Court of Appeals' conclusion that a trial court may admit hearsay evidence to prove an element of a crime unless

---

[2]  In 2011, OEC 803(8) was amended to add a new subsection (d) that specifically provides that "[i]n civil and criminal proceedings, a sheriff's return of service" is excepted from the rule against hearsay. Or Laws 2011, ch 661, §14. That amendment does not apply to this case because the contempt hearing was held before its effective date.

the declarant is unavailable to testify. Second, defendant asserts that the Court of Appeals opinion in this case is inconsistent with this court's decision in *Birchfield*. In that regard, defendant essentially tracks the concern expressed in Judge Sercombe's concurrence.

## II.   ARTICLE I, SECTION 11, ANALYSIS

In *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992), this court held that, when construing a provision of the original Oregon Constitution, we engage in a three-part analysis. We examine the text in its context, the historical circumstances of the adoption of the provision, and the case law that has construed it. *Id.* Our goal is to ascertain the meaning most likely understood by those who adopted the provision. The purpose of that analysis is not to freeze the meaning of the state constitution in the mid-nineteenth century. Rather it is to identify, in light of the meaning understood by the framers, relevant underlying principles that may inform our application of the constitutional text to modern circumstances. *State v. Davis*, 350 Or 440, 446, 256 P3d 1075 (2011).

Article I, section 11, provides, in part, that a defendant in a criminal prosecution has the right "to meet the witnesses face to face." It is an unqualified statement, to be sure. Nevertheless, this court has observed that "[t]here is nothing to indicate that the framers of our constitution intended thereby to do away with the well-established exceptions to the confrontation rule." *State ex rel Gladden v. Lonergan*, 201 Or 163, 177, 269 P2d 491 (1954). Similarly, Thomas Cooley explained in his treatise on constitutional law that "[t]he rule that the prisoner shall be confronted with the witnesses against him does not preclude such documentary evidence as would be admissible under the rules of the common law in other cases." Thomas M. Cooley, *A Treatise on the Constitutional Limitations* 318 n 2 (1878). One so-called common law exception to the confrontation rule concerned documentary evidence regarding collateral facts. This court expressly acknowledged that exception to Article I, section 11, in *State v. Saunders*, 14 Or 300, 305, 12 P 441 (1886), *overruled in part on other grounds by State v. Marsh*, 260 Or 416, 490 P2d 491 (1971), *cert den sub nom*

*O'dell v. Oregon*, 406 US 974 (1972). In *Saunders*, the court noted the rule that, ordinarily, a defendant has the right of confrontation. 14 Or at 304. Citing Cooley's treatise, the court then explained that the rule is subject to a number of exceptions:

> "The rule, although sanctioned by constitutional declaration, like all general rules, has its exceptions. It does not apply to such documentary evidence to establish collateral facts, as would be admissible under the rules of the common law in other cases."

*Id*. The court did not apply that exception in *Saunders*, however, nor, since *Lonergan*, has the court had a further occasion to consider whether there are other types of hearsay evidence to which the confrontation right under Article I, section 11, does not apply.

A. *The* Campbell *test*

In the meantime, though, we have had several occasions to discuss in detail the general confrontation requirements of Article I, section 11. Perhaps our most extensive elaboration of those requirements occurred in *Campbell*. The precise issue before the court in that case was the admissibility of hearsay statements made by a three-year-old victim of sexual abuse. 299 Or at 647. We concluded that, although the testimony otherwise would be admissible under a statutory hearsay exception—OEC 803(18a)—that applied on its face irrespective of the availability of the declarant, its admission nevertheless foundered on the state's failure to establish the unavailability of the child declarant. *Id*. at 650-52. We explained that, under Sixth Amendment jurisprudence, the admission of out-of-court statements made by a declarant who does not testify at trial violates a defendant's confrontation rights unless the declarant is unavailable and the out-of-court statements have adequate indicia of reliability. *Id*. at 648 (citing *Ohio v. Roberts*, 448 US 56, 66, 100 S Ct 2531, 65 L Ed 2d 597 (1980), *overruled by Crawford v. Washington*, 541 US 36, 43-50, 124 S Ct 1354, 158 L Ed 2d 177 (2004)). In particular, we applied the following analysis of the United States Supreme Court as articulated in *Roberts*:

"The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformity with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case ***, the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. ***

"The second aspect operates once a witness is shown to be unavailable. *** [T]he Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' ***

"The Court has applied this 'indicia of reliability' requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.' ***

"In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." [*Roberts*, 448 US] at 65-66, 100 S Ct 2531 (citations and footnotes omitted).

*State v. Moore*, 334 Or 328, 333-34, 49 P3d 785 (2002) (quoting *Roberts* in explaining decision in *Campbell*).

In *Campbell*, we "adopt[ed] the reasoning of the Supreme Court of the United States in determining what constitutes unavailability of a hearsay declarant and what constitutes adequate indicia of reliability of hearsay declarations to satisfy our state constitutional confrontation clause." 299 Or at 648. We did so "on independent and separate state grounds," thus implicitly concluding that Article I, section 11, reflected that same reasoning. *Id.* Applying that two-part test in *Campbell*, we concluded that admission of the challenged evidence had violated the defendant's right to meet the witness face to face because the state had not

demonstrated that the declarant was unavailable or incompetent to testify. *Id.* at 651-52.

We returned to the confrontation requirement of Article I, section 11, in *Moore*, where we addressed the admissibility of hearsay statements that a nontestifying witness made to a police officer who was investigating a possible crime. *Moore*, 334 Or at 335. Although there was no showing that the declarant was unavailable to testify, the state asserted that the evidence was admissible under the excited utterance exception to the hearsay rule, OEC 803(2), which does not require the declarant to be unavailable as a condition of admission. The state conceded on appeal that, under *Campbell*, the statements were inadmissible under Article I, section 11, in the absence of proof of the unavailability of the declarant. The state nevertheless argued that the court should abandon *Campbell* in light of more recent developments in the federal constitutional case law. This court declined the state's invitation, emphasizing that the test endorsed in *Campbell* was consistent with what the framers of the Oregon Constitution would have intended with respect to Article I, section 11. *Moore*, 334 Or at 338-39. The court concluded:

> "Accordingly, we reaffirm the unavailability requirement and the methodology articulated in *Campbell* and subsequent cases. Before the state may introduce into evidence a witness's out-of-court declarations against a criminal defendant, the state must produce the witness at trial or demonstrate that the witness is unavailable to testify."

*Id.*, at 340-41.

Later, in *Birchfield*, we again followed the test set out in *Campbell*. At issue in *Birchfield* was whether the admission of a laboratory report at the defendant's trial violated his confrontation right under Article I, section 11, where the trial court, pursuant to ORS 475.235 (2005),[3] had

---

[3] ORS 475.235 (2005) provided, in part:

"(4) In all prosecutions in which an analysis of a controlled substance or sample was conducted, a certified copy of the analytical report signed by the director of a state police forensic laboratory or the analyst or forensic scientist conducting the analysis shall be accepted as prima facie evidence of the results of the analytical findings.

allowed the state to introduce the laboratory report without calling the criminalist who prepared it to testify and without demonstrating that the criminalist was unavailable. In *Birchfield*, we explained:

> "The right to meet an opposing witness face to face cannot be transformed into a duty to procure that opposing witness for trial. It is the state that seeks to adduce the evidence as to which the criminalist will testify. The defendant has a constitutional right to confront the proponent of that evidence, the criminalist. The legislature may require the defendant to assert that right or to design a procedure to determine whether the defendant agrees that a written report will suffice. But, to require that a defendant do more changes the right to insist that the state present evidence the 'old-fashioned way' into an obligation to procure a witness for the state.

> "We hold that the trial court's admission of the laboratory report without requiring the state to produce at trial the criminalist who prepared the report or to demonstrate that the criminalist was unavailable to testify violated defendant's right to confront the witness against him under Article I, section 11, of the Oregon Constitution. We need not reach the question of whether the admission of the laboratory report also violated the federal Confrontation Clause."

*Birchfield*, 342 Or at 631-32.

As explained below, unlike the challenged evidence in this case, the evidence that we rejected in *Birchfield* contained investigative facts and opinions involving suspected criminal activity. *Id.* at 626. Accordingly, we properly concluded that it was subject to the defendant's confrontation right under Article I, section 11. To be sure, in *Moore*, the court referred to the unavailability requirement in sweeping terms. *Moore*, 334 Or at 341. However, as was the circumstance in *Campbell* and *Birchfield*, the court in *Moore* did not have any occasion to address the decisive question

---

"(5) Notwithstanding any statute or rule to the contrary, the defendant may subpoena the analyst or forensic scientist to testify at the preliminary hearing and trial of the issue at no cost to the defendant."

ORS 475.235 was amended in 2007, among other reasons, for the purpose of deleting subsections (4) and (5). Or Laws 2007, c 636, § 1.

in this case—that is, whether certain types of documentary hearsay evidence simply do not implicate the confrontation right at all. Thus, although we have engaged in extended analyses of other aspects of the confrontation right expressed in Article I, section 11, this case requires that we further consider and elaborate the scope of that right. *See State v. Cavan*, 337 Or 433, 98 P3d 381 (2004) (adopting similar approach in considering scope of impartial jury guarantee under Article I, section 11).

B.  *Animating principles of the confrontation right*

        As noted, Article I, section 11, provides, in part, thatan accused in a criminal action has the right "to meet the witnesses face to face." Article I, section 11 was adopted in 1857 without amendment or debate. Claudia Burton & Andrew Grade, *A Legislative History of the Oregon Constitution of 1857 - Part I (Articles I & II)*, 37 Willamette L Rev 469, 517-18 (2001). The provision was derived from the identically worded article from Indiana's Constitution adopted in 1851. *Lonergan*, 201 Or at 175. The specific wording of the confrontation clause—"to meet the witnesses face to face"—can be traced back to the Massachusetts Constitution of 1780, which was one of the original state confrontation provisions that led to the similarly worded confrontation provision in the United States Constitution. *State v. Smyth*, 286 Or 293, 297 n 3, 593 P2d 1166 (1979).

        The state and federal confrontation provisions were a response to historical abuses involving the civil-law mode of criminal procedure that prevailed in 16th and 17th century England and colonial America when *ex parte* examinations were used as evidence in criminal trials. *Crawford*, 541 US at 43-50. "It was th[o]se practices that the Crown deployed in notorious treason cases like [Sir Walter] Raleigh's; that the Marian [bail and committal] statutes invited; that English law's assertion of a right to confrontation was meant to prohibit; and that the founding-era rhetoric decried." *Id*. at 50. The framers were "keenly" aware that the "[i]nvolvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse." *Id*. at 56 n 7. The people adopted confrontation guarantees to ensure the reliability

of that evidence by requiring in-court testimony and the opportunity for cross-examination. *Id.* at 44-50, 61-62.

Previous decisions by this court are consistent with that understanding. In *Lonergan*, the court stated that

"[t]he essential purpose of confrontation *** is to secure for the accused the opportunity of cross-examination. However, it is recognized that there is a secondary advantage to be gained by the personal appearance of the witness before the court and jury where his testimony is orally given. This advantage is stated by Professor Wigmore as follows: 'the judge and the jury are enabled to obtain the elusive and incommunicable evidence of a witness' deportment while testifying, and a certain subjective, moral effect is produced upon the witness.' 5 Wigmore, Evidence 3d ed 125, § 1395.

"In 5 Wigmore, Evidence 3d ed 127, § 1396, the author states:

"'*** [T]he secondary advantage *** is an advantage to be insisted upon whenever it can be had. No one has doubted that it is highly desirable, if only it is available. But it is merely desirable. Where it cannot be obtained, the requirement ceases. ***'"

*Lonergan*, 201 Or at 173-74 (emphasis omitted). In *Smyth*, 286 Or at 300, the court amplified:

"In our system a defendant is not tried on a dossier compiled in prior hearings, no matter how fairly and judiciously conducted. His guilt must be established at the trial by evidence that convinces a factfinder beyond a reasonable doubt. *** As the United States Supreme Court stated in *Barber* [*v. Page*, 390 US 719, 725, 88 S Ct 1318, 20 L Ed 2d 255 (1968)], '[t]he right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness.'"

Two modern practices most closely resemble the historical abuses against which the confrontation right was meant to guard. The first is the use in a criminal proceeding of statements obtained during police interrogations. *Crawford*, 541 US at 52-53, 68. "Statements taken by police officers in the course of interrogations *** bear a striking resemblance to examinations by justices of the peace in England" who were discharging "essentially [an]

investigative and prosecutorial function." *Id.* at 52-53. "The involvement of government officers in the production of testimonial evidence presents the same risk, whether the officers are police or justices of the peace." *Id.* at 53.

The second involves the use of prior testimony concerning the guilt of the defendant in lieu of live testimony from the same witness at the defendant's present trial. From the beginning of its jurisprudence concerning Article I, section 11, this court has grappled with that issue. *See*, *e.g.*, *State v. Moen*, 309 Or 45, 64, 786 P2d 111 (1990) (holding that, where a witness is unavailable for trial, Article I, section 11, is not violated by admission of transcript of that witness's prior sworn testimony, provided statutory prerequisites of OEC 804(3)(a) are met);[4] *State v. Von Klein*, 71 Or 159, 165-69, 142 P 549 (1914) (where unavailable witnesses had been subject to cross examination by defendant, testimony of witnesses at previous trial of defendant on different charges held admissible); *State v. Meyers*, 59 Or 537, 541-42, 117 P 818 (1911) (where unavailable witnesses had been subject to cross examination by defendant, testimony of witnesses at a previous trial of the defendant on same charges held admissible); *State v. Walton*, 53 Or 557, 562-63, 99 P 431 (1909) (same); *State v. Bowker*, 26 Or 309, 313, 38 P 124 (1894) (where unavailable witnesses had been subject to cross examination by defendant, deposition testimony of witness to which defendant had consented held admissible).

Given that historical context, we conclude that the framers of the Oregon Constitution likely were influenced to adopt the Article I, section 11, confrontation requirement (1) to prevent the government from using *ex parte* examinations of suspects and witnesses; and (2) to limit and condition the use of prior testimony in lieu of live witness testimony at trial. With that background in mind, we turn to the general category of evidence at issue here, official

---

[4] OEC 804(3)(a) provides:

"The following are not excluded by [OEC 802, the hearsay rule] if the declarant is unavailable as a witness:

"(a) Testimony given as a witness at another hearing of the same or a different proceeding * * *, if the party against whom the testimony is now offered * * * had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

records, and the applicability of the confrontation right to such evidence.

## C.   *The official records hearsay exception*

After the general rule prohibiting hearsay crystallized by the beginning of the 18th century, several "classes of hearsay statements continued to be received as before." *See* John Henry Wigmore, 5 *Evidence in Trials at Common Law* § 1426, 256 (James H. Chadbourn rev 1974). Those historical hearsay exceptions included, among others, qualifying official records. *Id.* § 1426 at 257. Official records have long been "admissible in evidence on account of their public nature, though their authenticity be not confirmed by the usual tests of truth; namely, the swearing and the cross examination of the persons who prepared them." *Gaines v. Relf*, 53 US (12 How) 472, 570, 13 L Ed 1071 (1851). The official records hearsay exception permitted the admission of "official registers or records kept by persons in public office in which they [were] required, either by statute or by the nature of their office, to write down particular transactions occurring in the course of their public duties or under their personal observation." *Evanston v. Gunn*, 99 US 660, 666, 25 L Ed 306 (1878). The exception rests on a "presumption that public officers do their duty." Wigmore, § 1632 at 618. "The fundamental circumstance is that an official duty exists to make an accurate statement, and that this special and weighty duty will usually suffice as a motive to incite the officer to its fulfillment." *Id*.

To say that such documents are deemed reliable, though, does not fully answer a confrontation challenge under Article I, section 11. As discussed, there also is the general requirement of necessity to consider. In that regard, although the official records exception is one of the well established common law hearsay exceptions, it does not require the unavailability of the out-of-court declarant as a condition of admission. *See* OEC 803(8). According to defendant, the absence of proof of the declarant's unavailability precluded admission of the certificate of service in this case because the fact to be proved—that defendant had notice of the restraining order—was an *element* of the contempt charge. Defendant asserts that hearsay documents such as the

certificate of service are admissible under a limited exception to the confrontation right only when they are offered to establish *collateral* facts. Defendant is mistaken.

D.   *The collateral facts confrontation "exception"*

The so-called collateral facts "exception" to the confrontation right has been referred to, and applied, in two distinct patterns of circumstances that do not necessarily implicate identical principles. In one line of cases, perhaps best represented by the United States Supreme Court's decision in *Dowdell v. United States*, 221 US 325, 31 S Ct 590, 55 L Ed 753 (1911), courts have determined that the admission of challenged evidence did not violate a defendant's confrontation right because the evidence did not constitute the declaration of a witness with respect to the defendant's guilt or innocence. In *Dowdell*, the Court considered a statutory codification of the Sixth Amendment right, as it appeared in the Philippine Bill of Rights. On his initial appeal to the Philippine Supreme Court, a question arose as to whether the defendant had ever entered a plea to the charge, and whether he had been present, as required, throughout his trial. The record was unclear as to the latter question, and, to clarify it, the territorial Supreme Court directed the trial court clerk to certify (1) whether he, the clerk, had been present throughout the trial, and (2) whether, from the clerk's own observation, the defendant also had been continuously present. Citing the collateral facts exception, the Court upheld that procedure against a confrontation challenge, stating:

"In the present case, the judge, clerk of the court, and the official reporter were not witnesses against the accused within the meaning of this provision of the statute. They were not asked to testify to facts concerning their guilt or innocence. They were simply required to certify, in accordance with a practice approved by the supreme court of the Philippine Islands, as to certain facts regarding the course of trial in the court of first instance. The taking of such certification involved no inquiry into the guilt or innocence of the accused; it was only a method which the court saw fit to adopt to make more complete the record of the proceedings in the court below, which it was called upon to review. Where a court, upon suggestion of the

diminution of the record, orders a clerk of the court below to send up a more ample record, or to supply deficiencies in the record filed, there is no production of testimony against the accused, within the meaning of this provision as to meeting witnesses face to face, in permitting the clerk to certify the additional matter."

*Id.*, 221 US at 331.

Interestingly, in reaching that conclusion, the Court relied on the Michigan Supreme Court's decision in *People v. Jones*, 24 Mich 215 (1872), a case that Cooley also cited in his discussion of the collateral facts exception.[5] *Jones*, however, involved a different sort of problem. In that case, the defendant was charged with attempting to set fire to a clothing store with intent to injure the insurer of the store. An element for conviction was proof that the insurer was authorized to do business in the state, which the prosecutor offered to show by means of a certificate from the Secretary of State. *See Gregory v. State*, 40 Md App 297, 313, 391 A2d 437 (1978) (so describing *Jones*). Against a confrontation objection, the court stated:

"We do not think the provision of the [Michigan] constitution securing to the defendant in a criminal prosecution the right 'to be confronted with the witnesses against him' can apply to the proof of facts in their nature essentially and purely documentary, and which can only be proved by the original, or by a copy officially authenticated in some way, especially when the fact to be proved comes up collaterally, as in the present case. In such a case, it would, in fact, be impossible to apply it, except by requiring the attendance and testimony of the secretary of state, to the fact of the filing of the papers, *etc.*, to which he has certified. We have been cited to no case, and are not aware of any, which would authorize us to reject the certificates on this ground."

*Jones*, 24 Mich at 225. In contrast to *Dowdell*, the document at issue in *Jones* was proffered to prove an element of the charged offense. The court nonetheless rejected a confrontation challenge because the fact to be proved—that is, the existence of the certificate itself—was essentially documentary.

---

[5] Cooley, 1 *Constitutional Limitations* 662 n 4 (8th ed 1927).

There are other examples of the strands of reasoning reflected in *Dowdell* and *Jones*, but those cases adequately set the markers for present purposes. The doctrine appears to have been applied equally to circumstances where, as in *Dowdell*, the proffered document was literally collateral to the trial of the defendant's guilt or innocence, and to circumstances where, as in *Jones*, although pertinent to guilt or innocence at trial, the proffered document was not central to the merits of the case and was itself primary evidence of the asserted fact. Thus, although defendant seems to believe that, for a document to be "collateral," it must not be proffered to prove an element of a criminal charge, *Jones* shows that that is not invariably true. Rather, over the years, those two loosely connected patterns of circumstances have been classified as a single exception to the confrontation right that has been applied to various types of documents, including but not limited to, official records.[6]

Most importantly for our purposes here, the collateral facts doctrine actually is not an *exception* to the confrontation right at all. Rather, qualifying documents are admissible in the face of a confrontation objection because they do not contain the statement of a "witness" for purposes of the constitutional guarantee. *Dowdell*, 221 US at 330-31.

E. *Official records and the confrontation right*

Contrary to defendant's view, there are other arrays of circumstances in which the admission of documentary evidence has been held not to violate a defendant's confrontation right. One such array, embodied in the official records doctrine, dates back in criminal cases to at least the eighteenth century in England. That doctrine does not focus in particular on whether the proffered evidence goes to an element of a charged offense, as opposed to collateral

---

[6] *See*, *e.g.*, *United States v. Benner*, 24 Fed Cas 1084 (1830) (similarly to *Jones*, holding that certificate of secretary of state that victim had been accredited as a foreign minister was admissible in prosecution for arrest of foreign minister); *U.S. v. Bacas*, 662 F Supp 2d 481 (ED Va 2009) (relying on *Dowdell* for conclusion that "[n]eutral statements that relate only to the operation of a machine" constitute collateral facts); *Sangster v. State*, 70 Md App 456, 468, 521 A 2d 811 (1987) (relying on *Dowdell*, concluding that statements of physicians in medical records pertaining to the defendant's competence to stand trial were not declarations of "'witnesses against' the defendant").

facts. *King v. Aickles*, 168 Eng Rep 297 (1785), is a leading authority on point.

In *Aickles*, the defendant was indicted for the felony of prematurely returning from overseas exile after being discharged from prison. Thus, the date of the defendant's discharge was an essential element of the charge. To establish that date, the trial court admitted prison records, which included a turnkey's entry showing the defendant's release date. 168 Eng Rep at 298. The defendant asserted that the prosecution should have produced the turnkey who made the underlying entry rather than the clerk of the prison papers. But the admission of the evidence was upheld, because "the law reposes such a confidence in public officers, that it presumes they will discharge their several trusts with accuracy and fidelity; and therefore whatever acts they do in discharge of their public duty may be given in evidence, and shall be taken to be true." *Id*. The court explained that "[t]he daily book of a public prison is good evidence to prove the time of a prisoner's discharge," and that there was no difference between civil and criminal cases with respect to such evidence. *Id*. at 298 n 1.[7]

The official records doctrine has long been recognized in the United States as well. In his 1804 criminal-law treatise, Leonard MacNally explained that "[t]he books of public offices, and of public bodies, which of course are not interested in the event of the trial, are admissible evidence." L. MacNally, *Rules of Evidence on Pleas of the Crown* 475 (Philadelphia 1804). In his 1842 treatise, Simon Greenleaf stated:

> "We are next to consider the *admissibility and effect* of the *public documents*, we have been speaking of, as instruments of evidence. And here it may be generally observed

---

[7] *See also King v. Rhodes*, 168 Eng Rep 115-116, 116 n (b) (1742) (admitting ship's musterbook from the Navy Office to prove that a person died and noting that, in a prior case, an official court entry had been admitted to prove a court order); *King v. Martin*, 170 Eng Rep 1094-1095, 1095 (1809) (admitting vestry book in libel prosecution to prove that a person was appointed treasurer, explaining that "[t]he books of the Bank of England, and of other public companies are evidence to a great variety of purposes," and also noting that public corporation books involving the government of cities and towns are admissible when the entries are made by proper officers).

> that to render such documents, when properly authenticated, admissible in evidence, their contents must be pertinent to the issue. It is also necessary that the document be made by the person, whose duty it was to make it, and that the matter it contains be such as belonged to his province, or came within his official cognizance and observation. Documents having these requisites are, in general, admissible to prove, either *prima facie* or conclusively, the facts they recite."

Simon Greenleaf, 1 *A Treatise on the Law of Evidence* § 491, 538 (1972 reprint of first ed 1842). *See also White v. United States*, 164 US 100, 104, 17 S Ct 38, 41 L Ed 365 (1896) (observing that discharge entries from jail records "would be evidence in and of themselves" to show whether a particular prisoner was present in court, where the defendant was charged with defrauding the government while employed to bring witnesses to court); *Gaines*, 53 US at 570 (recognizing "public or official writings" exception and noting that "[t]he same rule prevails in the courts of all of the states of this Union"); *United States v. Johns*, 4 US 412, 415, 1 L Ed 888 (CC Pa 1806) (a copy of ship's manifest that custom-house officers were required to maintain was "clearly admissible" to show the value of a ship—that is, harm to the victim—in criminal prosecution for fraudulently sinking the ship with intent to defraud insurer); *Heike v. United States*, 192 F 83 (2d Cir 1911) (public dock records showing cargo weight admissible in prosecution for importing goods at less than true weight).

The content of official records that is admissible in the absence of confrontation is confined to matters that must be recorded pursuant to an official administrative duty and may not include investigative or gratuitous facts or opinions. *Salte v. Thomas*, 127 Eng Rep 104 (1802) (prison records admissible to show dates of defendant's confinement, but not cause of confinement; distinguishing *Aickles* accordingly); *Olender v. United States*, 210 F2d 795, 801 (9th Cir 1954) (information set out in an official record "based upon general investigations and upon information gleaned second hand from random sources must be excluded"). One of the most clearly expressed statements of that limitation is found in *Commonwealth v. Slavski*, 245 Mass 405, 140 NE 465, 469

(1923), where, after surveying numerous common law decisions, the court said:

> "The principle which seems fairly deducible from [those decisions] is that a record of a primary fact made by a public officer in the performance of official duty is or may be made by legislation competent *prima facie* evidence as to the existence of that fact, but that records of investigations and inquiries conducted, either voluntarily or pursuant to requirement of law, by public officers concerning causes and effects and involving the exercise of judgment and discretion, expressions of opinion, and making conclusions are not admissible as evidence as public records."

Greenleaf acknowledged a similar limitation:

> "In regard to *official registers*, we have already stated the principles, on which these books are entitled to credit; to which it is only necessary to add, that where the books possess all the requisites there mentioned, they are admissible as competent evidence of the facts they contain. But it is to be remembered, that they are not, in general, evidence of any facts not required to be recorded in them, and which did not occur in the presence of the registering officer."

Greenleaf, *2 Evidence* § 493 at 540. Likewise:

> "In regard to *certificates*, given *by persons in official station*, the general rule is, that the law never allows a certificate of a mere matter of fact, not coupled with any matter of law, to be admitted as evidence. If the person was bound to record the fact, then the proper evidence is a copy of the record, duly authenticated. But, as to matters, which he was not bound to record, his certificate, being extra-official, is merely the statement of a private person, and will therefore be rejected. So, where an officer's certificate is made evidence of certain facts, he cannot extend its effect to other facts, by stating them also in the certificate; but such parts of the certificate will be suppressed. The same rules are applied to an officer's return."

*Id.* § 498 at 544-45.

Turning to the particular type of evidence at issue in this case, at common law a sheriff's return of service was

admissible as an official record in civil and criminal cases. Wigmore, § 1664 at 769 (sheriff's returns were admissible under official-records exception).[8] None of the cases on which defendant relies are to the contrary.[9] Disputes arose involving the scope of the returns, however. The rule was that returns of service were admissible to prove facts that the officers were required to certify as part of their official administrative duties. *Driggers v. United States*, 21 Okla 60, 95 P 612, 618 (1908). Typically, a sheriff was required to serve process and make a written return of that fact. *See, e.g.*, General Laws of Oregon, Civ Code, ch XIII, title III, § 965, p 389 (Deady 1845-1864) (imposing those requirements). Hence, a statement that the officer was required to make—such as that the officer served a subpoena—was admissible. *See Driggers*, 95 P at 618 (authorized statements admissible); *People v. Lee*, 128 Cal 330, 332-33, 60 P 854 (1900) (return would be admissible to prove service); *State v. Daggett*, 2 Aik 148 (Vt 1826) (return on writ was *prima facie* evidence). A gratuitous statement of fact or opinion in the return, however—such as that the subpoenaed person was dead or could not be found within the county after a diligent search—was not admissible at common law. *See, e.g.*, *Driggers*, 95 P at 618 (witness dead); *Lee*, 128 P at 331-33 (witness not in county).

The original Deady Code adopted a comparable view. The code included extensive provisions governing the admission of a broad range of official records, General Laws of

---

[8] Another treatise that was prominent in the 19th century, but which defendant cites for a different proposition, similarly proclaimed:

"As the sheriff is a public officer and minister of the court, credit is given to the statement upon his return, as to his official acts."

Thomas Starkie, *Practical Treatise of the Law of Evidence*, 436 (4th ed 1876)

[9] Defendant heavily relies on *Francis v. Wood*, 28 Me 69, 15 Shep 69 (1848), but that case—a civil case—is not on point. *Francis* contained a single sentence, unsupported by authority, about the need for in-court testimony in a criminal case. 28 Me at 75. That was *dicta*, because the issue was whether the return of service was conclusive evidence in a civil case. Moreover, the key statement in the return of service was not a genuine official record: the officer certified that he arrested a person but that the arrestee was then "subsequently wrested from [him] by Captain Albert Wood, master of the schooner James, and by him carried to sea in said schooner." *Id.* at 71. That gratuitous entry more closely resembled a statement in a police report detailing a hindering-prosecution offense than an official statement narrowly documenting the fulfillment of the officer's official duty (which was to make the arrest and document the fact of arrest).

Oregon, Civ Code, ch VIII, title V, §§ 707-739, p 326-32 (Deady 1845-1864), including a provision making official records "primary evidence of the facts stated therein." *See id.* § 735, p 331-32 ("[e]ntries in public or other official books or records, made in the performance of his duty, by a public officer of this state, or of the United States, or by another person in the performance of a duty specially enjoined by the law of either, are primary evidence of the facts stated therein"). The official records provisions applied in civil and criminal cases alike. *See* General Laws of Oregon, Crim Code, ch XXII, § 210, p 477 (Deady 1845-1864) ("[t]he law of evidence in civil actions is also the law of evidence in criminal actions and proceedings, except as otherwise specially provided in this code").

It is true that the Deady Code provided that affiants in civil actions were "witnesses." *See* General Laws of Oregon, Civ Code, ch VIII, title III, § 699, p 324 (Deady 1845-1864) (defining "witness" as "a person whose declaration under oath or affirmation is received as evidence for any purpose, whether such declaration be made on oral examination, or by deposition or affidavit"). In criminal cases, by contrast, a statutory confrontation right has always existed, such that, in the absence of consent to a deposition, "the testimony of a witness must be given orally, in the presence of the court and jury.". General Laws of Oregon, Crim Code, ch XXIII, § 213, p 478 (Deady 1845-1864).[10] However, that requirement was not offended by the admission of qualifying official records in a criminal case.

The code provided that "there are four kinds of evidence," among them "the testimony of witnesses" and "writings." General Laws of Oregon, Civ Code, ch VIII, § 658, p 316 (Deady 1845-1864). Thus, the code plainly distinguished between "witnesses" and "writings." In addition, as noted, the code provided that a particular class of writings—official records—was admissible as "primary evidence of the facts stated therein." The code defined "primary evidence" as

"that, which suffices for the proof of a particular fact, until contradicted and overcome [by] other evidence. For

---

[10]  That statutory requirement exists today in identical form. *See* ORS 136.420.

> example; the certificate of a recording officer is primary evidence of a record; but it may be afterwards overcome upon proof that there is no such record."

General Laws of Oregon, Civ Code, ch VIII, § 664, p 316 (Deady 1845-1864). Thus, an official record was primary evidence of the facts stated therein; it was admissible as a writing, not as the testimony of a "witness" that was subject to the confrontation requirement of section 213 of the criminal code. It follows that, when Article I, section 11, was adopted, the framers of the Oregon Constitution would have understood that the admission of qualifying official records prepared pursuant to an administrative duty generally would not violate the confrontation right of a person accused of a crime.

To recapitulate: Records made by a public officer in the performance of an official administrative duty are primary evidence of the facts stated in them. Although official records may contain hearsay declarations, such declarations are not "witness" statements that offend a defendant's confrontation right if they are confined to matters that the officer is bound by administrative duty to report and do not include investigative or gratuitous facts or opinions. *See*, *e.g.*, *Slavski*, 140 NE at 469; *see also Driggers*, 95 P at 618; *Lee*, 128 P at 331-33. That understanding is consistent with the principles that animate the confrontation right because it forecloses the admission, in the guise of official records, of *ex parte* examinations of criminal suspects or witnesses or prior witness testimony that the right was meant to guard against. It also is consistent with the rationale of our decision in *Birchfield*, where we applied Article I, section 11, to more contemporary circumstances. As discussed, the challenged documentary evidence in that case—a laboratory report—contained investigative facts and opinions pertaining to suspected criminal activity. 342 Or at 626.[11] In those circumstances, we properly concluded that—irrespective of statutory authority for its admission—the admission of the report violated the defendant's confrontation right under Article I, section 11, in the absence of a showing that the declarant was unavailable to testify.

---

[11] In fact, the state did not argue in *Birchfield* that the criminalist's report was an official record under OEC 803(8).

F.   *Application*

With that understanding in mind, we return to the issue in this case: Whether, in the absence of a showing that the declarant was unavailable to testify, the admission of the deputy sheriff's certificate of service of the FAPA restraining order in defendant's contempt trial violated his confrontation right under Article I, section 11. The certificate of service was created pursuant to a statutory duty imposed by ORS 107.718(8)(b), which provides:

> "The county sheriff shall serve the respondent person- ally [with a FAPA restraining order] unless the petitioner elects to have the respondent served personally by a private party or by a peace officer who is called to the scene of a domestic disturbance at which the respondent is present, and who is able to obtain a copy of the order within a reasonable amount of time. Proof of service shall be made in accordance with ORS 107.720. When the order does not contain the respondent's date of birth and service is effected by the sheriff or other peace officer, the sheriff or officer shall verify the respondent's date of birth with the respondent and shall record that date on the order or proof of service entered into the Law Enforcement Data System under ORS 107.720."

ORS 107.720(1)(a) (2009), in turn, provided, in pertinent part:

> "Whenever a restraining order, as authorized by ORS 107.095 (1)(c) or (d), 107.716 or 107.718, that includes a security amount and an expiration date pursuant to ORS 107.095, 107.716 or 107.718 and this section, is issued and the person to be restrained has actual notice of the order, the clerk of the court or any other person serving the petition and order shall immediately deliver to a county sheriff a true copy of the affidavit of proof of service, on which it is stated that personal service of the petition and order was served on the respondent, and copies of the petition and order. *** Upon receipt of a copy of the order and notice of completion of any required service by a member of a law enforcement agency, the county sheriff shall immediately enter the order into the Law Enforcement Data System maintained by the Department of State Police and into the databases of the National Crime Information Center of the United States Department of Justice. *** The sheriff shall provide the petitioner with a true copy of any required proof

of service. Entry into the Law Enforcement Data System constitutes notice to all law enforcement agencies of the existence of the order. ***."[12]

Taken together, those statutes imposed administrative duties on the deputy sheriff to serve the restraining order on defendant personally, to make proof of that service, and to make corresponding entries in pertinent law enforcement databases to provide notice of the existence of the order.[13] The deputy issued the certificate pursuant to those duties in the underlying restraining order proceeding, and it did not contain any investigative or gratuitous facts or opinions.[14] Accordingly, the certificate did not contain the statement of a witness so as to trigger defendant's confrontation right under Article I, section 11, and it was not necessary to establish that the declarant was unavailable as a condition of its admission. We therefore reject defendant's challenge under Article I, section 11.

We emphasize that our holding in this case is a limited one. This case does not present an occasion to contemplate a broad or universal definition of the term "witness" for purposes of the confrontation right under Article I, section 11. Moreover, we do not hold that every document that falls within the official records hearsay exception, OEC 803(8), necessarily is admissible in the face of a confrontation objection. Instead, we hold only that the official record in this case did not contain a witness statement that implicated defendant's confrontation right because the declaration within it was confined to an administrative matter that the deputy sheriff was bound by an official duty to report, and the record did not include investigative or gratuitous facts or opinions.

---

[12] The legislature amended ORS 107.720 in 2011, but those amendments apply only to protective orders entered on or after the effective date of the legislation—that is, January 1, 2012. Or Laws 2011, ch 269, §§ 1, 9.

[13] Although the parties have not raised the issue, we note that, at least with respect to service of a FAPA order by a person who is not a member of a law enforcement agency, ORS 107.720(1) appears to require the provision of an "affidavit" of service; in this case, the proof that the deputy sheriff made was a "certificate" of service. Defendant does not assert that the proof did not comply with the statute and, accordingly, we do not consider the matter further.

[14] Again, the latter point distinguishes this case from *Birchfield*, where the criminalist's report was prepared to investigate and prosecute criminal conduct.

## III.   SIXTH AMENDMENT ANALYSIS

We turn to defendant's Sixth Amendment challenge. In *Crawford*, the United States Supreme Court held that the confrontation clause prohibits the admission of out-of-court statements that are testimonial in nature, unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. 541 US at 53-54. As discussed, the state does not contend that Schweitzer was unavailable or that defendant had a prior opportunity to cross-examine him, so the only question is whether the officer's certificate of service was testimonial. The state argues that it was not testimonial because (1) it wasnot generated in response to a law enforcement or other prosecutorial request, and (2) it falls under the public records hearsay exception, which, the state argues, is inherently non-testimonial.

A.   *Documentary evidence and the* Crawford *test*

In *Crawford*, the Court described a testimonial state-ment as one made by an "accuser" that can be characterized as "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (internal quotation marks omitted). In *Melendez-Diaz v. Massachusetts*, 557 US 305, 129 S Ct 2527, 2538-40, 174 L Ed 2d 314 (2009), the Court applied *Crawford* to documents, holding that sworn certificates prepared to show the results of a forensic analysis of seized substances in that case were testimonial statements. In so holding, the Court rejected an argument that all evidence falling within the well-established hear-say exception for business records at common law is admis-sible absent confrontation. *Melendez-Diaz*, 557 US at 321. Business and public records generally do not raise confron-tation concerns, the Court reasoned, "not because they qual-ify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id.* at 324.

The Court in *Melendez–Diaz* further explained that the forensic certificates were made for the purpose of

proving a fact at trial: (1) they were sworn affidavits, thus constituting formalized materials that contained "the precise testimony the analysts would be expected to provide if called at trial," *id.* at 311; (2) they were prepared in response to an investigative law enforcement request, *id.*; and (3) under the relevant Massachusetts statute requiring production of the forensic certificates, the "sole purpose" of creating the certificates was to provide *prima facie* evidence in a criminal proceeding. *Id.* Based on those factors, the Court concluded that the forensic certificates were documents created specifically for use at trial. Therefore, the Court concluded that, unlike business and public records created for an administrative purpose, the certificates constituted testimonial statements subject to confrontation under the Sixth Amendment. *Id.*

Although *Melendez-Diaz* rejected the premise that all documents falling within the historical hearsay exception are admissible without confrontation, the certificate of service at issue here is readily distinguishable from the forensic certificates held to be testimonial in *Melendez-Diaz*. First, the certificate of service was not prepared in response to a request made by law enforcement during the course of an investigation. In fact, the violation of the restraining order did not occur until well after service was completed. Further, unlike in *Melendez-Diaz*, the statutes that required production of the certificate of service in this case, ORS 107.718 and ORS 107.720, demonstrate that the certificate was made for the primary purpose of "administration of an entity's affairs." *Melendez-Diaz*, 557 US at 324. As discussed, under ORS 107.718(8)(b), the county sheriff or another peace officer—in this case a deputy sheriff—has a legal duty to personally serve a restraining order and to make proof of that service. The routine fulfillment of those duties ensures that respondents in restraining order proceedings receive the notice to which they are statutorily and constitutionally entitled, establishes a time and manner of notice for purposes of determining when the order expires or is subject to renewal, and assures the petitioner that the respondent knows of its existence.

Later decisions of the Court reinforce those distinctions. In *Bullcoming v. New Mexico*, ___ US ___, 131 S Ct

2705, 180 L Ed 2d 610 (2011), the question presented was whether a "certificate of analyst" containing the results of a blood-alcohol content (BAC) test administered after a DUII arrest required the testimony of the analyst who conducted the gas chromatograph test. *Id.* at 2710-11. The trial court had admitted the certificate as a business record, and allowed its introduction through the testimony of "an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification." *Id.* at 2713. The Court rejected the suggestion that the report was nontestimonial:

> "In all material respects, the laboratory report in this case resembles those in *Melendez-Diaz*. Here, as in *Melendez-Diaz*, a law-enforcement officer provided seized evidence to a state laboratory required by law to assist in police investigations[.] * * * Like the analysts in *Melendez-Diaz*, [the analyst] tested the evidence and prepared a certificate concerning the result of his analysis. * * * Like the *Melendez-Diaz* certificate, [the certificate here] is 'formalized' in a signed document. * * * In sum, the formalities attending the 'report of blood alcohol analysis' are more than adequate to qualify [the analyst's] assertions as testimonial."

*Id.* at 2717 (citations omitted). Justice Sotomayor concurred. In her view:

> "To determine if a statement is testimonial, we must decide whether it has 'a primary purpose of creating an out-of-court substitute for trial testimony.' * * * When the 'primary purpose' of a statement is 'not to create a record for trial,' 'the admissibility of the statement is the concern of the state and federal rules of evidence, not the Confrontation Clause.'"

*Bullcoming*, 131 S Ct at 2720 (Sotomayor, J., concurring) (quoting *Michigan v. Bryant*, 562 US ___, ___, 131 S Ct 1143, 1155, 179 L Ed 2d 93 (2011) (internal citations omitted). Noting that *Bullcoming* was "not a case in which the State suggested an alternate purpose, much less an alternate primary purpose, for the BAC report," such as to provide for medical treatment, Justice Sotomayor concluded that the primary purpose "is clearly to serve as evidence," and its introduction without confrontation was therefore in error. *Id.* at 2722-23 (emphasis omitted).

*Williams v. Illinois*, ___ US ___, 132 S Ct 2221, 183 L Ed 2d 89 (2012), is the latest Supreme Court decision addressing a confrontation clause challenge to evidence of a laboratory record. In that case, an expert witness testified in a rape trial that a DNA profile produced by a private laboratory from vaginal swabs taken from the rape victim matched a DNA profile produced by a police laboratory from a sample of the defendant's blood. 132 S Ct at 2227-28. A plurality of the Court concluded that the testimony did not violate the confrontation clause because "[o]ut-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause." *Id.* at 2228. Significantly for this case, the plurality further held that, even if the prosecution had elicited testimony about the laboratory report to establish its truth, the confrontation clause would not have been violated. *Id.* at 2242-43. The plurality applied an objective test to determine "the primary purpose that a reasonable person would have ascribed to the [out-of-court] statement, taking into account all of the surrounding circumstances." *Id.* at 2243. Because the primary purpose of the laboratory report "was not to accuse [the defendant] or to create evidence for use at trial," the laboratory technicians had no incentive to fabricate the report, and the Court concluded that use of the report "'bears little if any resemblance to the historical practices that the Confrontation Clause aimed to eliminate.'" *Id.* at 2243-44 (quoting *Bryant*, ___ US at ___, 131 S Ct at 1167 (Thomas, J., concurring).

Although a majority of the *Williams* Court agreed that an assessment of the primary purpose of an out-of-court statement is required to determine whether it is testimonial, a majority did not agree on the scope of that inquiry. The plurality asked whether the statement had "the primary purpose of accusing a targeted individual of engaging in criminal conduct." 132 S Ct at 2242; *see also id.* at 2250-51 (Breyer, J., concurring). Justice Thomas disputed that the primary purpose of a testimonial statement must be to target an individual rather than to establish a fact for potential use in a criminal prosecution. *Id.* at 2261-63 (Thomas, J.,

concurring). Although he disagreed with the proposition that the laboratory was not primarily concerned with producing evidence for a criminal prosecution, he concurred in the judgment because, in his opinion, a testimonial statement must bear indicia of solemnity, which the laboratory report lacked. *Id.* at 2261-65 (Thomas, J., concurring). The dissenting justices did not disavow the primary purpose test but criticized the plurality's description of it as including an inquiry whether the speaker intended to target a particular person. *Id.* at 2272-74 (Kagan, J., dissenting). We need not dwell on those disagreements further, however, because, as we will explain, under any iteration of the applicable test, we conclude that the primary purpose of the return of service in this case was administrative, not prosecutorial.

B.  *Application*

As discussed, the primary purpose for which the certificate of service in this case was created was to serve the administrative functions of the court system, ensuring that defendant, the respondent in the restraining order proceeding, received the notice to which he is statutorily and constitutionally entitled, establishing a time and manner of notice for purposes of determining when the order expires or is subject to renewal, and assuring the petitioner that the subject of the order knew of its existence. It was foreseeable that the certificate might be used in a later criminal prosecution to furnish proof that defendant had notice that the order had been entered against him. However, the more immediate and predominant purpose of service was to ensure that defendant could—and would—comply with the order—that is, avoid a violation, consistently with the primary goal of the FAPA process, which is "abuse prevention," not punishment. *See* ORS 107.700 ("ORS 107.700 to 107.735 shall be known and may be cited as the 'Family Abuse Prevention Act.'").

Similarly, federal courts have held that warrants of deportation are nontestimonial when introduced in a later prosecution for illegal reentry into the United States. To

convict a person of illegally reentering the United States, 8 USC § 1326 (2006), the government must prove that the defendant was previously deported. *United States v. Burgos*, 539 F3d 641, 643 (7th Cir 2008). To prove the defendant's prior deportation, the government will typically offer a warrant of deportation, a document signed by an immigration official attesting to the fact that the official observed the deportee leaving the country. *United States v. Torres-Villalobos*, 487 F3d 607, 612 (8th Cir 2007). Such warrants are analogous to the returns of service challenged here: In each case, a document is created and kept in a public agency's ordinary course, with an attestation by a public official that he or she did something (served the defendant) or saw the defendant do something (leave the country), and is offered to prove an element of a crime in a subsequent prosecution. The warrants of deportation, both pre- and post-*Melendez-Diaz*, have consistently been held to be nontestimonial because their "primary purpose is to maintain records concerning the movements of aliens and to ensure compliance with orders of deportation, not to prove facts for usein future criminal prosecutions." *Torres-Villalobos*, 487 F3d at 613; *see also United States v. Garcia*, 452 F3d 36, 42 (1st Cir 2006); *Burgos*, 539 F3d at 644-645; *United States v. Diaz-Gutierrez*, 354 Fed Appx 774, 775 (4th Cir 2009), *cert den*, 559 US 959, 130 S Ct 1560, 176 L Ed 2d 147 (2010) (per curiam) (reaffirming warrants of deportation as nontestimonial after *Melendez-Diaz*).

Finally, we reject defendant's suggestion that the certificate of service falls within the core class of testimonial statements identified in *Crawford*, in particular, those statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 541 US at 52. In *Melendez-Diaz*, while referring to the quoted "objective witness" formulation, the Court repeatedly emphasized that it was the purpose for which the forensic certificates were created that rendered them testimonial. *See* 557 US at 311 ("sole purpose of the affidavits was to provide 'prima facie evidence'"); *id*. at 324 (certificates' sole purpose was to pro-vide evidence against the defendant); *id*. at 324 (certificates were "prepared specifically for use at petitioner's trial").

Because the Court has not held, nor otherwise indicated, that a document primarily created for an administrative purpose could be rendered testimonial merely by the possibility that it might be used in a later criminal prosecution, we likewise refrain from doing so in this case. *See United States v. Orozco-Acosta*, 607 F3d 1156, 1164 (9th Cir 2010), *cert den*, ___ US ___, 131 S Ct 946, 178 L Ed 2d 782 (2011) ("*Melendez-Diaz* cannot be read to establish that the mere possibility that *** any business or public record *** could be used in a later criminal prosecution renders it testimonial under *Crawford*."); *United States v. Mendez*, 514 F3d 1035, 1046 (10th Cir), *cert den*, 553 US 1044 (2008) (similar).

It follows that the certificate of service was not testimonial, and its admission did not violate defendant's Sixth Amendment confrontation rights.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.